IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ANTOINNE LEWIS SMITH** | * | |
|     **Plaintiff,** | | |
|     v. | * | **CIVIL ACTION NO. PWG-13-3177** |
| **MONTGPOMERY COUNTY** | * | |
|   **CORRECTIONAL FACILITY** | | |
| **ARTHUR WALLENSTEIN** | * | |
| **ROBERT GREEN** | | |
| **SGT. E. WATKINS** | * | |
|     **Defendants.** | | |
| | ***** | |

## **MEMORANDUM**

**I. Background**

On October 24, 2013, plaintiff Antoinne Lewis Smith, a former inmate at the Montgomery County Correctional Facility ("MCCF"), filed a 42 U.S.C. § 1983 civil rights complaint against MCCF, its Director Arthur Wallenstein, MCCF Warden Robert Green and MCCF Sergeant Watkins. Compl., ECF No. 1. He alleged that on October 20, 2013, he "was pushed to the ground, jumped, spray[ed] with ma[c]e while [he] was already down, [and] drag[g]ed [with his] arms pulled up to almost [his] head." Compl. 4. He claims that his "back, shoulders, and knees, were very damaged." *Id.* at 5. Smith seeks compensatory damages and asks to be moved for "safety reasons" to "Baltimore County, where [his] sentence runs concurrent."[1] *Id.* Smith later supplemented his complaint to allege that on that same date Watkins first hit him in the "chest area," then "beat, sprayed [him] with mace, drag[g]ed [him] while handcuffed from the back, pick[ed] [him] up, pulled [his] arms to almost the back of [his] head, slam[m]ed [him] back to the floor, and placed [him] in a

---

[1] This request now is moot, as Plaintiff informed the Court that his "sentence is done at Montgomery County Correctional Facility, and [he is] going to Baltimore County Detention Center." ECF No. 4.

restraint chair." Supp. 1, ECF No. 17. He alleges that at no time did he try "to fight, hit or disrespect anyone." *Id*.

Defendants MCCF, Wallenstein and Green have filed a motion to dismiss, ECF No. 22, to which Smith has filed an opposition.[2] ECF No. 25. The motion to dismiss may be determined on the pleadings and shall be granted without a hearing. *See* Loc. R. 105.6 (D. Md. 2014).

**II. Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of the rule is to "test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia v. Drezhlo,* RDB-12-0237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (discussing standard from *Iqbal* and *Twombly* ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

---

[2] Defendant Watkins has filed an answer to the complaint. ECF No. 23.

**III. Discussion**

This court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party, *see Scott v. Harris,* 550 U.S. 372, 378 (2007); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) and liberally construes Smith's pleadings in light of the fact that he is self-represented. *See Gordon v. Leek*, 574 F.2d 1147, 1151 (4th Cir. 1978). In his unverified complaint and supplemental complaint, Smith claims that Sergeant Wilkins assaulted him on October 20, 2013, as detailed above. No claims are raised against the other defendants.

In their motion to dismiss, defendants MCCF, Wallenstein and Green argue that Smith's claims are moot because he has been released from MCCF. They otherwise maintain that no articulable claim has been raised against Wallenstein or Green because no allegations are raised involving their personal involvement. Finally they argue that MCCF is not an entity subject to suit under § 1983.

In Smith's opposition, he claims that he "feared for his Life, Safety, and Healthy while being at Montgomery County Correction Facility, and tried to bring this to the [attention of] Defendants, Director, Arthur Wallenstein, and Warden, Robert Green." Opp'n 1. He insists that there were "three different major incidents where damages were done to [him]," including a later "assault[]" by Sergeant Watkins. *Id.* Thus, he argues that he informed both Wallenstein and Green of "all assaults, damages, and how [he] felt unsafe at the Facility," such that they are responsible for and "should have . . . prevented" the October 20, 2013 alleged assault. *Id.* Plaintiff attaches a letter he wrote to Warden Green on October 28, 2013, claiming that he "was seriously assaulted" on October 20, 2013. Opp'n Ex. A, ECF No. 25-1. He also attaches an Inmate Grievance Form that he completed on November 18, 2013. Opp'n Ex. C, ECF No. 25-3.

3

Indeed, Smith filed an earlier case in this Court, PWG-13-2258, alleging that another prison officer assaulted him, and he "reported it" to Warden Green, among others, and filed inmate grievance forms. Additionally, Smith filed a later case in this Court, PWG-13-3893, in which he claimed that Sergeant Watkins assaulted him again on December 9, 2013. He named Warden Green as a defendant in both cases.[3]

Smith included Director Wallenstein and Warden Green as defendants in this case on the theory that they violated his constitutional rights because they are responsible for the actions of their subordinates. In certain circumstances, supervisory officials may be held liable for the constitutional injuries inflicted by their subordinates. *See Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994) (citing *Slakan v. Porter,* 737 F.2d 368 (4th Cir. 1984)). This liability, however, is not premised on *respondeat superior,* but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* at 798 (quoting *Slakan,* 737 F.2d at 372–73). "[L]iability ultimately is determined 'by pinpointing the persons in the decision-making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.' " *Id.* at 798 (quoting *Slakan,* 737 F.2d at 376).

To establish supervisory liability against a warden or others under § 1983, Smith must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff"; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

---

[3] I take judicial notice of these facts pursuant to Fed. R. Evid. 201(b)(2).

*Shaw,* 13 F.3d at 799.

Smith has failed to set out a claim against Director Wallenstein or Warden Green. He alleges no personal involvement on the part of these administrators, and his claim that he "informed" them and filed an administrative grievance remedy regarding the alleged incident, is insufficient to confer personal knowledge and liability. Smith's allegations that the administrators were informed of the incident *after* the fact did not give the administrators knowledge that Watkins's behavior posed a risk *prior* to the incident. Nor did his earlier lawsuit give them knowledge, as it pertained to another officer. Thus, these allegations fall far short of establishing Defendants Wallenstein and Green's § 1983 liability. *See Brooks v. Beard*, 167 Fed. App'x 923, 925 (3d Cir. 2006).

Further, MCCF is an inanimate object that cannot act under color of state law and therefore is not a "person" subject to suit under Section 1983. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n. 55 (1978) (noting that for purposes of § 1983 a "person" includes individuals and "bodies politic and corporate"); *Brownlee v. Williams*, No. 2:07–0078 DCN RSC, 2007 WL 904800, at *2 (D.S.C. Mar. 22, 2007) (collecting cases in which "courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law" (citing *Allison v. Cal. Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969) (prison not a "person"); *Preval v. Reno*, 57 F. Supp. 2d 307, 310 (E.D. Va. 1999) (same); *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989) (same)); *see generally* 5 Charles Alan Wright, *et al.*, *Fed. Prac. & Proc.* § 1230 (2002).

The motion to dismiss filed by MCCF, Director Wallenstein and Warden Green shall be granted. Sergeant Watkins has filed an answer and he shall be subject to the scheduling order set

Case 8:13-cv-03177-PWG   Document 33   Filed 08/18/14   Page 6 of 6

out in the accompanying Order.

## IV.  CONCLUSION

Defendants MCCF, Director Wallenstein and Warden Green's motion to dismiss shall be granted.  A scheduling order shall be entered reflecting the motions practice to be followed by defendant Watkins and plaintiff Smith.  A separate Order shall be entered reflecting the rulings entered in this decision.

Date: August 18, 2014              _____/S/_____
                                    Paul W. Grimm
                                    United States District Judge