IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTOINNE LEWIS SMITH,<br>Plaintiff, | * | |
| v. | * | CIVIL ACTION NO. PWG-13-3177 |
| SGT. E. WATKINS,<br>Defendant. | * | |
| | ***** | |

## MEMORANDUM

On October 24, 2013, plaintiff Antoinne Lewis Smith ("Smith"), a former inmate at the Montgomery County Correctional Facility ("MCCF"), filed a 42 U.S.C. § 1983 civil rights complaint against MCCF, Director Arthur Wallenstein, Warden Robert Green and Sergeant Eric Watkins. He alleged that on October 20, 2013, Watkins "pushed him to the ground, jumped, sprayed [him] with mace, dragged [him], arms pulled up to almost [his] head." ECF No. 1. He claimed that his back, shoulders and knees were damaged. Smith sought compensatory damages. Id. Smith later supplemented his complaint to allege that on October 20, 2013, Watkins first hit him in the chest area, then "beat, sprayed [him] with mace, dragged [him] while handcuffed from the back, pick[ed] [him] up, pulled [his] arms to almost the back of [his] head, slammed [him] back to the floor, and placed [him] in a restraint chair." ECF No. 17. He alleges that at no time did he try to fight, hit or act with disrespect towards anyone.[1] Id.

On August 18, 2014, the court entered a Memorandum and Order that granted the motion to dismiss that Defendants MCCF, Wallenstein and Green filed and granted Smith and Defendant Watkins additional time to file motions for summary judgment. ECF Nos. 33 & 34. Defendant Watkins has filed a motion for summary judgment, ECF No. 35, accompanied by surveillance

---

[1] Both the complaint and supplemental complaint are unverified

videos, excerpts from Smith's deposition, the Inmate Guidebook, and the affidavits of Watkins, Captain Gail David, and Lieutenant Martin Westby, ECF Nos. 35-1 – 35-6. Smith has filed a motion to proceed, construed as an opposition to Watkins's motion for summary judgment ("Pl.'s Opp'n"). ECF No. 38. The dispositive motion may be determined on the pleadings and shall be granted without oral hearing. *See* Loc. R. 105.6 (D. Md. 2014).

## I. Standard of Review

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

## II. Discussion

### Facts

This court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party, *see Scott v. Harris*, 550 U.S. 372, 378 (2007); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) and liberally construes Smith's pleadings in light of the fact that he is self-represented, *see*

*Gordon v. Leek*, 574 F.2d 1147, 1151 (4th Cir. 1978). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Thus, when the record contains video footage that is not open to more than one interpretation and contradicts the non-movant's assertions, the court "view[s] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). This means that when a videotape "clearly depict the events at issue, they will prevail over contrary evidence submitted by either side." *Glascoe v. Sowers,* No. ELH–11–2228, 2013 WL 5330503, at *5 (D. Md. Sept. 20, 2013). But, if "the videos are unclear and ambiguous, the court must adopt [the nonmovant's] version of events for purposes of the Motion [for Summary Judgment]." *Id.* This factual background consists of the undisputed facts garnered from the testimony, documentary evidence, and video footage, as well as the disputed facts viewed in the light most favorable to Smith as the nonmoving party. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

Smith has been housed at MCCF since October 5, 2012. Def.'s Mem. 5. At the time of the October 20, 2013 incident, he "had a history of intimidating inmates and had been in and out of segregation." Watkins Aff. On October 20, 2013, Watkins was conducting a "pre-shift shakedown" of Smith's cell to determine that the cell was "structurally safe and d[id] not contain contraband." *Id.* During the shakedown Smith was seated at a table outside the cell. *Id.*; Surveillance Video; David Aff. Outside the cell is an officer's station, which is one of the restricted areas that prisoners are not permitted to enter. Watkins Aff.; Inmate Guidebook; David Aff. Smith had been informed that he was not permitted to enter the officer's station. Watkins Aff. At 10:40 p.m. that night, Officer David was standing at the officer's station observing the shakedown. David Aff.

Watkins walked into Smith's cell and came out with papers and two pens. Watkins Aff.;

3

Smith Dep. 42. The pens were altered from their original condition as they were wrapped together with paper and tape. Watkins Aff. Watkins walked over to the officer's station and put the two pens on the station, *id.*; Smith Dep. 43, informed Smith that he was removing contraband, and instructed Smith to return to his cell, Watkins Aff. In a shakedown, any item altered from its original condition is confiscated. Watkins Aff.; Westby Aff. Additionally, two flex pens taped together pose a direct threat to inmate or correctional officer safety, as "they are sturdy enough to be used as a weapon." Watkins Aff.; *see* Westby Aff.

Rather than complying with the order to return to his cell, Smith got up from the table where he was sitting, walked over to the officer's station, and picked up the confiscated pens. Watkins Aff.; Smith Dep. 44. Watkins walked over to Smith and gave him three to four orders to drop the pens. Watkins Aff. David also told Smith "to 'put it down.'" David Aff. According to Watkins, Smith did not comply with these direct orders. Watkins Aff. Smith acknowledges that Watkins told him to drop the pens, but maintains that he "dropped the pen[s]." Smith Dep. 44.

Watkins took a step back and grabbed his MCCF-issued pepper spray. *Id.*; Westby Aff. Watkins states that he believed that Smith was attempting to walk towards him with the flex pens in his hand. Watkins Aff. When Smith took a step forward, Watkins pushed him one time in his chest with his left palm. *Id.*; Westby Aff. Other officers instantly intervened and ordered Smith to get down to the ground. Smith admits he did not obey the order, insisting that he told them that he could not get down on the ground because his "back was messed up." Smith Dep. 48 & 50. The other officers took Smith to the ground and placed handcuffs on him while Watkins, who had accidentally dropped his mace on the ground, took multiple steps to back away from Smith and the other officers to retrieve the mace. Watkins Aff.; Westby Aff. Watkins employed two one-second bursts of pepper

4

spray as Smith refused to comply and was ignoring direct commands, and instead of spraying Smith directly, he accidentally sprayed other officers. It took officers one and one-half minutes to control the situation and restrain Smith. Video Surveillance.

During the escort off the housing pod, officers had to "slide [Smith] out on the floor" on the ground with his hands above his head, because of his large size[2] and refusal to walk to the medical unit. Watkins Aff. He subsequently was placed in a restraint chair for transport by the other officers. *Id.*; *see* Westby Aff. Smith refused to allow medical staff to examine him and his restraints or to decontaminate him from the pepper spray. David Aff.

### Parties' Arguments

Smith alleges a shoulder and back injury, as well as swelling to his right leg arising out of the incident. In his deposition, he acknowledges that he had prior chronic back problems arising out of a 1988 gunshot wound and prior swelling to his leg caused by a blood clot. Smith Dep. 36 & 54-55. Watkins asserts that Smith has failed to state an excessive force claim against him, and he also raises a qualified immunity defense.

In his unverified opposition, Smith asserts that he was assaulted on October 20, 2013, and "never at any time show[ed] any physical force towards Watkins." Pl.'s Opp'n 1. He insists that Watkins punched him in the chest area, dragged him, sprayed him with mace, slammed him to the floor, put him in a restraint chair and refused him medical treatment. *Id.* He claims that he had subsequent problems with Watkins in December of 2013. *Id.* In June of 2014, he filed an application for statement of charges against Watkins. *Id.* at 8 (Application for Stmt. of Charges).

---

[2] At the time of the incident, Smith weighed at least 320 pounds and was 6'4" tall. Smith Dep. 73.

### Legal Analysis

There is no dispute that at the time of his confinement at MCCF, Smith had been convicted of an offense. Therefore, his excessive force claim shall be evaluated under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). It is well-settled that the Eighth Amendment's prohibition against "cruel and unusual punishment" prohibits prison officials from inflicting pain "unnecessary[ily] and wanton[ly]" against prisoners. *Id.* at 319 (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)).

"An inmate's Eighth Amendment claim involves a subjective component and an objective component." *See Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). Specifically, the court must decide "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Where, as here, a prisoner makes an excessive force claim, the court's subjective component analysis "turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (citations omitted); *see also Williams*, 77 F.3d at 761. The court ultimately must look at "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of the injury inflicted," as well as "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to the them, and any efforts made to temper the severity of a forceful response." *See Whitley*, 475 U.S. at 321.

The absence of significant injury alone is not dispositive of a claim of excessive force. *See*

*Wilkins v. Gaddy*, 559 U.S. 34, 36-37 (2010). It is "the nature of force" used by the correctional officer, "rather than the extent of the [prison inmate's] injury, [that] is the relevant inquiry" in an Eighth Amendment claim. *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013). "'[T]he extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation,'" but if force is applied "'maliciously and sadistically,'" liability is not avoided simply because the prisoner "had the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 37-38 (quoting *Hudson*, 503 U.S. at 9). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action" for excessive force in violation of the Eighth Amendment's prohibition of cruel and unusual punishment, however. *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9). Thus, in an excessive force case such as the one at hand, "the 'core judicial inquiry' [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7) (concluding that a gratuitous beating by prison guards, even without injuries requiring medical attention, violated a prisoner's Eighth Amendment rights (citation omitted)).

In addition to the affidavits and deposition excerpts supporting his contentions, which provide the facts summarized above, Watkins has provided surveillance videos of the incident in question. The first video shows Watkins exiting Smith's cell on October 20, 2013, at 10:39:40 p.m. and placing something on the officer's station. Smith is seen clearly, sitting at a table in the pod facing his cell, getting up, and walking over to the officer's station. These events occurred in a matter of seconds. A discussion with Watkins ensued. Before any physical altercation took place, a number of officers approached Smith and Watkins. It then appears that Smith moved closer to

Watkins and Watkins is seen pushing Smith in the chest at least once. Several officers from the pod and officer's station then surround Smith. This portion of the incident occurred in no more than one minute. The remaining portion of the video is not clear due to the number of officers in the small area next to the officer's station. Smith, however, can be seen subsequently, being slid out of the area. The second video, lasting approximately forty seconds, shows Smith being slid and then picked up and walked out of the pod some ten minutes later at 10:49 p.m. The third video shows a restraint chair being wheeled down a corridor at MCCF and several minutes later Smith appears in that restraint chair being wheeled back down the corridor. The video ends at 10:53 p.m. with Smith, in a restraint chair, being pushed down another corridor.

Smith has been challenged to come forward with verified materials to oppose Watkins' exhibits in support of his own claims that Watkins maliciously applied force. He has failed to so do. The video evidence shows Smith approaching the officer's station—an area that he was not permitted to enter—; Smith and Watkins engaging in a brief verbal dispute; Smith, a large individual, entering Watkins's space (or comfort zone); and Watkins physically attempting to apply a chemical agent and pushing him away. This unambiguous portion of the video directly involving Smith and Watkins is not open to more than one interpretation. The additional evidence Watkins identifies, which Smith does not refute with evidence to the contrary, demonstrates that Smith seized a contraband item and then refused to obey verbal commands,[3] in response to which Watkins applied force to regain control of Watkins. Smith ultimately must demonstrate that Watkins did not use

---

[3] Although Smith testified that he obeyed a command to drop the pen and explained that he physically could not obey the command to drop to the ground, he had to be asked repeatedly to drop the pen and he did not obey the command to return to his cell. It is not clear from the video whether Smith dropped the pen or, if he did, how many times he was ordered to do so before he complied.

8

force "in a good-faith effort to maintain or restore discipline," but rather applied it "maliciously and sadistically to cause harm." *See Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7). He has not done so.

### III. Conclusion

Defendants' motion for summary judgment shall be granted.[4] Smith's motion to proceed, construed as his opposition, shall be denied. Judgment shall be entered in favor of Watkins. A separate Order shall be entered reflecting the rulings entered in this decision.

Date: 09/11/15

Paul W. Grimm
United States District Judge

---

[4] In light of the absence of a constitutional deprivation, I need not address Defendant's qualified immunity argument.

9